SWEETLAND v. BANKERS' LIFE INS. CO.

(Supreme Court, Special Term, Oswego County. February, 1907.)

INSURANCE—LIFE POLICY—SURRENDER VALUE.

The first condition of a life policy provided that after three annual payments the insured, on surrender of the policy while still in force, might "withdraw in cash the full amount of the surrender value." The first page of the policy contained a provision that all the conditions on the back were a part of the contract, and on the fourth page was a table over which was printed: "Illustration of the value calculated under this policy, based on the assumption that the experience of the company will be according to the Actuaries' Rate of Mortality, with interest at 4 per cent." Under this was a column headed, "Cash Surrender and Loans, as Provided for in the First Paragraph of Conditions," and a sequence of years, with the figures "$331.08" against the eighth year. Below the table

was a further statement that, in addition to the above, it was "estimated" that at the end of the accumulation there would be a considerable dividend realized under the policy. *Held,* that the policy should be construed as a definite contract to pay the sum stated on the surrender of the policy at the end of the eighth year, and that the "illustration" of values was not a mere estimate.

Action by Fred E. Sweetland against the Bankers' Life Insurance Company to recover the surrender value of a life insurance policy. Judgment for plaintiff.

L. C. Rowe, for plaintiff.
Wilson B. Brice, for defendant.

DE ANGELIS, J. On the 4th day of August, 1898, the Bankers' Life Insurance Company of the city of New York issued and delivered to Fred E. Sweetland, the plaintiff, its life insurance policy, numbered 5,862, in and by which, in consideration of the payment of the sum of $93.30, the first premium, and of the further payment of $93.30 on the 4th day of August in each and every year during the continuance of said policy, the company promised to pay Carrie A. Sweetland, the wife of Fred E. Sweetland, or such other beneficiary as he might elect, as in the policy provided, if living, otherwise to the executors, administrators, or assigns of Fred E. Sweetland, the sum of $3,000, within 90 days after receipt at the home office of the company in the city of New York of proofs of death of Fred E. Sweetland during the continuance of the policy. In and by said policy it was further provided that after three full annual premiums should have been paid thereon, upon the surrender of the policy while still in force at the home office of the company, the insured might withdraw in cash the full amount of the surrender value. The policy appears principally in printed matter and partly in written matter on a sheet of paper which, folded once, is, as folded, about 17 inches in length and 13 inches in width, and makes four pages. The first page seems to contain the usual insurance contract, but refers to certain conditions as follows:

"In consideration of the agreements contained in the application for this policy and of the conditions on the back thereof, all of which are made a part of this contract."

On the next or second page, which is the back of the first page, is certain printed matter, changed in one slight respect by writing, headed with the words "Conditions Referred to on First Page." On the third page there is printed matter which plainly forms part of the conditions already referred to. On the fourth or last page, in the upper half of it, is the title or indorsement, partly printed and partly written, so that in folding the paper for filing it appears on the outside; and in the lower half, printed, is the following:

"Illustration of values calculated under this policy, based on the assumption that the experience of the company will be according to the Actuaries' Rate of Mortality, with interest at 4 per cent."

Then follow four headings, with figures underneath them, the first of which headings is "At end of," and the second, "Cash Surrender

and Loans, as Provided for in First Paragraph of Conditions." Then, under the first heading, comes the sequence of the years: "3d year, 4th year, 5th year, 6th year, 7th year, 8th year," etc. Against these years, and under the second heading, are figures in writing. Against the eighth year are the figures "$331.08."

At the time the policy was issued the Bankers' Life Insurance Company was duly incorporated under the laws of the state of New York for the purpose of doing business on the regular assessment or co-operative plan. Pursuant to the provisions of chapter 690 of the Laws of 1893 entitled "An act authorizing all insurance companies transacting business on the co-operative or assessment plan to reincorporate as a stock corporation under its existing corporate name," it reincorporated as a stock corporation on or about August 2, 1899, with a capital stock of $100,000, and has ever since been doing business as a stock company, and is the defendant herein. While the policy in question was in full force, and at the end of the eighth year, with the belief that under the policy the plaintiff was entitled to the said sum of $331.08, he offered to surrender the policy to the defendant at its home office and demanded $331.08 as the cash surrender value of the policy. The defendant refused to accept the policy and pay that sum. The defendant claimed that under section 52 of the insurance law (Laws 1892, p. 1955, c. 690), as amended by chapter 326, p. 763, of the Laws of 1906, $19 was all it was called upon to pay. Elder v. Bankers' Life Ins. Co., 117 App. Div. 722, 102 N. Y. Supp. 702. The plaintiff declined to accept that sum and brought this action. ·

The policy is to be construed favorably to the plaintiff. In the first paragraph of the conditions it is provided, as stated before, as follows:

"That after three full annual premiums shall have been paid hereon, upon surrender of this policy while still in force at the said home office, the insured may withdraw in cash the full amount of the surrender value."

A later provision in the conditions gave the plaintiff, at the end of three years from the date of the policy, certain options, the third being as follows:

"To discontinue this policy and receive in cash its said surrender value, including dividends then apportioned."

The amount of the cash surrender value at the end of any given year appears in the table on the back of the policy above referred to. Shall that table be regarded as part of the policy, and does it contain a definite agreement on the part of the defendant to pay to the plaintiff $331.08 at the end of the eighth year from the date of the policy upon his surrendering the policy?

That table occupies a conspicuous place upon the defendant's contract delivered to the plaintiff. It is significant that the figures indicating the surrender values are definite and are in writing, and not printed. This table, as stated before, is headed as follows:

"Illustration of values calculated under this policy, based on the assumption that the experience of the company will be according to the Actuaries' Rate of Mortality, with interest at 4 per cent."

If the language had been "These are the" in place of "Illustration of," the meaning would have been plainer. But it must be remembered that this language was used by the defendant, and, being susceptible of the construction for which the plaintiff contends, I think the plaintiff is entitled to have that construction placed upon it. It may be said further that the language "based on the assumption that the experience of the company will be according to the Actuaries' Rate of Mortality, with interest at 4 per cent.," made the problem of values dependent upon whether the experience of the company should be found to be according to the Actuaries' Rate of Mortality, with interest at 4 per cent. This does not, however, seem to me to be the proper interpretation of the language used. The Actuaries' Rate of Mortality is a well-known table of mortality adopted by many insurance companies.

The conditions, referred to on the first page of the policy and appearing on the subsequent pages provide for the maintenance of a reserve fund "for meeting the cost of advancing age, dividends, and surrender values." The surrender values depend upon the reserve. Two important factors entering into the problem of maintaining this reserve fund are the mortality table adopted by the company and the rate of interest undertaken to be earned upon its moneys. Whether the rate of interest shall be 3 per cent., or $3\frac{1}{2}$ per cent., or 4 per cent., depends upon the agreement of the company. It will not do for the defendant to say that it adopted 4 per cent. as the rate of interest simply arbitrarily for the purpose of presenting fine figures to look at. While in the last paragraph of the second page of the policy there is a provision for replenishing the reserve fund in case it should fall below the requirements, which in that event would have subjected the policy in question to an assessment, no necessity for such an assessment appears to have existed, and it seems to me that the burden of showing such necessity was upon the defendant. It will not do for the defendant to say that, if its experience were different from that established by the Actuaries' Rate of Mortality table, the surrender value would change, any more than it would do for it to say that it adopted its rate of interest at 4 per cent. arbitrarily.

Again, the figures definitely stating cash surrender values are headed by the printed words "Cash Surrender and Loans, as Provided for in the First Paragraph of Conditions." This language does not seem to be equivocal, and, turning back to the "first paragraph of conditions," this language may be found:

"The insured may withdraw in cash the full amount of the surrender value."

As further indicating that the cash surrender values were intended to be definite, the language at the foot of the table is significant:

"In addition to the above, it is estimated that at the end of the accumulation period in either settlement there will be a considerable dividend realized under this policy."

Here the company properly uses the word "estimated" as applying to a problem which concededly could not be definite; but the fact that the company estimated that there would be a considerable dividend realized under the policy, "in addition to the above," could not fairly be regarded as indicating that "the above" was simply an "estimate."

I do not think that the defendant's claim that this table was intended only as an estimate is tenable. I prefer to think that the company was honest, and intended to make an agreement, rather than dishonest, and intended to allure its patrons by flattering estimates placed before them in such manner as to mislead and deceive.

I think the plaintiff is entitled to judgment for the amount demanded in the complaint, and findings may be prepared accordingly.